IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MARK B.,

        Plaintiff,

  v.                                 Civil Action No.
                                        3:19-CV-1062 (DEP)

COMMISSIONER OF SOCIAL,
 SECURITY,

        Defendant.

_____

APPEARANCES:                         OF COUNSEL:

FOR PLAINTIFF

DOLSON LAW OFFICE           STEVEN DOLSON, ESQ.
126 N. Salina St., Suite 3B
Syracuse, NY 13202

FOR DEFENDANT

HON. ANTOINETTE L. BACON    JOSHUA L. KERSHNER, ESQ.
Acting United States Attorney     Special Assistant U.S. Attorney
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

    Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the Commissioner of Social Security, pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are cross-motions for judgment on the pleadings.[1] Oral argument was heard in connection with those motions on October 8, 2020, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

ORDERED, as follows:

1) Defendant's motion for judgment on the pleadings is GRANTED.

---

[1] This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2) The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3) The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

*[Signature]*

David E. Peebles
U.S. Magistrate Judge

Dated: October 14, 2020
Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
MARK B.,

                         Plaintiff,

vs.                                              3:19-CV-1062

Commissioner of Social Security,

                         Defendant.
------------------------------------------------------------x
```

*DECISION* - October 8, 2020

HONORABLE DAVID E. PEEBLES

United States Magistrate Judge, Presiding

APPEARANCES (by telephone)

| | |
|---|---|
| For Plaintiff: | STEVEN R. DOLSON<br>Attorney at Law<br>126 North Salina Street<br>Syracuse, NY 13202 |
| For Defendant: | SOCIAL SECURITY ADMINISTRATION<br>Office of Regional General Counsel<br>26 Federal Plaza<br>New York, New York 10278<br>  BY:  JOSHUA L. KERSHNER, ESQ. |

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

1             THE COURT:  All right.  Thank you both.  Let me
2    begin by congratulating counsel for excellent presentations.
3    I found this case to be fascinating.  It's a very narrow
4    issue that's been raised but a complicated one, nonetheless.
5             The plaintiff has commenced this proceeding
6    pursuant to 42, United States Code, Sections 405(g) and
7    1383(c)(3) to challenge an adverse determination by the
8    Commissioner of Social Security finding that he was not
9    disabled at the relevant times and, therefore, ineligible for
10   the benefits which he sought.  The background is as follows.
11            The plaintiff was born in November of 1966.  He is
12   currently 53 years of age.  Plaintiff was 49 years old at the
13   alleged onset of his disability in October of 2015.
14   Plaintiff stands approximately 5-foot-9 or 5-foot-10-inches
15   in height and weighs at various times between 183 and
16   200 pounds.
17            Plaintiff lives in Norwich in a house with his
18   wife, who he married in November of 2016, and two
19   stepdaughters who were 17 and 18 years of age in June of
20   2018, and according to my calculations, they are now 19 and
21   20, respectively.  Plaintiff also has two older sons.
22   Plaintiff has a high school diploma and an Associate's Degree
23   in Business Administration.  He has a driver's license and
24   does drive.
25            Plaintiff stopped working in October of 2015.

1  Prior to that time he worked as a supervisor in
2  pharmaceutical manufacturing, as a machine operator, as a
3  soldering assembler, and a warehouse coordinator.
4         Mentally, plaintiff suffers from anxiety.  Although
5  he has not undergone any significant psychiatric treatment,
6  he does take medications as needed to address his anxiety.
7  His conditions of concern in this case are physical and stem
8  from both back and neck pain or degenerative disc disease at
9  those levels.  He experiences pain that radiates into his
10 hips and legs.  He also suffers from hypertension, although
11 the hypertension apparently is being controlled adequately
12 with medication.
13        Plaintiff's physical conditions stem from a fall
14 from a ladder in 2005 and another incident in 2012 when a
15 porch roof fell on him.  He has not undergone any surgery or
16 injections.  He has done physical therapy.
17        There are several objective reports in the record
18 addressing both his lumbar and cervical conditions.  An X-ray
19 from November 2011, at page 277, reveals no fracture or
20 subluxation identified.  Plaintiff underwent magnetic
21 resonance imaging, or MRI, testing on April 18, 2016.  The
22 report appears at page 270 and 271.  The impression was the
23 disc and degenerative changes, which are specifically
24 described, at T12-L1 and L2-L3, as well as L4-L5, and L5-S1.
25        Plaintiff underwent another spinal X-ray on

1   January 9, 2014, and the results appear at page 276 of the
2   record.  The result was mild degenerative changes.  There was
3   an X-ray taken of plaintiff's lumbar region on May 4, 2016;
4   that's reported at 294.  The impression from that X-ray was
5   minimal degenerative spurring.  On November 16, 2017,
6   plaintiff underwent another lumbar MRI, the report appears at
7   299 and 300.  The impression was multilevel degenerative disc
8   disease, detailed above, and the focus is on L3-L4 and L4-L5.
9           Plaintiff underwent a limited spinal X-ray on
10  November 8, 2017, the result appears at page 301.  And again
11  the impression is mild degenerative disc disease with no
12  fracture or subluxation identified, and that appears at 301
13  and 302.
14          Plaintiff also underwent testing of his cervical
15  region.  There was an X-ray taken on January 9, 2014, that
16  appears at 275, that identifies degenerative changes and
17  straightened cervical lordosis.  On April 1, 2016, plaintiff
18  underwent cervical MRI testing, the result appears at 272 and
19  273, and reflects various bulges at certain levels, including
20  C4-C5 and C3-C4.  An X-ray was taken on April 25, 2016, the
21  result appears at 274, and the impression is straightening of
22  the cervical lordosis, and degenerative disc disease at C5-C6
23  and C6-C7.  An X-ray taken on May 4, 2016, resulted in the
24  impression of suggestion of possible disc disease at C3-C4
25  and C5-C6, and straightening.  That result appears at

1  page 295.
2       On December 7, 2017, a limited X-ray was taken of
3  plaintiff's cervical spine.  The result appears at 297 and
4  298.  The impression is straightening of cervical lordosis,
5  and C5-C6 degenerative disc disease.
6       Plaintiff's health care providers include Nurse
7  Practitioner Tiffany Rivenburgh at Bassett Healthcare, who is
8  described as his primary care provider.  He has also
9  undergone chiropractic treatment with Russell James and has
10 been seen at UHS Orthopedics by Nurse Practitioner Kristen
11 Menard.
12      Plaintiff has been prescribed various medications,
13 including Flexeril, Naproxen, Ibuprofen, Atenolol,
14 Levothyroxine, Simvastatin, and Lisinopril.
15      In terms of daily activities, plaintiff cooks
16 daily, shops weekly, showers daily, dresses, watches
17 television, radio, socializes with family and friends, mows
18 the lawn, he does it in five sections with breaks.  He does
19 dishes, does not do laundry.  He vacuums, sweeps and goes for
20 short walks.  Plaintiff is a smoker.  He smokes approximately
21 one half of a pack of cigarettes per day.  He also drinks
22 alcohol daily, but does not use illegal drugs.
23      Procedurally, plaintiff applied for Title II and
24 Title XVI benefits on March 19, 2016, alleging an onset date
25 of October 13, 2015.  He claimed disability based on

1  arthritis in his back and neck and numbness in his hands and
2  feet.  That appears at page 183 of the Administrative
3  Transcript.
4           A hearing was conducted on June 29, 2018, by
5  Administrative Law Judge Victor Horton, who addressed
6  plaintiff's disability claim.  ALJ Horton issued a decision
7  on August 23, 2018, that became a final determination of the
8  Agency on July 5, 2019, when the Social Security
9  Administration Appeals Council denied plaintiff's application
10 for review.  This action was commenced on August 28, 2019,
11 and is timely.
12          In his decision, ALJ Horton applied the familiar
13 five-step sequential test for determining disability.  He
14 first noted that plaintiff's insured status ended on
15 September 30, 2018.
16          He then found at step one that plaintiff had not
17 engaged in substantial gainful activity since his alleged
18 onset date.
19          At step two, ALJ Horton concluded that plaintiff
20 does suffer from severe impairments that impose more than
21 minimal limitations on his ability to perform basic work
22 functions, including degenerative disc disease of the lumbar
23 spine with disc protrusion and tear at the L5-S1 level,
24 degenerative disc disease of the cervical spine with disc
25 protrusion at the C4-C5 level, and chronic pain syndrome.

1        At step three, ALJ Horton concluded that
2   plaintiff's conditions do not meet or medically equal any of
3   the listed presumptively disabling conditions set forth in
4   the regulations, specifically considering listing 1.04.
5        At step four -- prior to going to step four, I
6   should say that the Administrative Law Judge crafted a
7   residual functional capacity finding, or RFC, determining
8   that plaintiff does retain the ability to perform light work
9   with various limitations that are set forth at page 15 of the
10  Administrative Transcript, including, but not limited to, the
11  claimant can frequently reach in all directions, including
12  overhead, and the claimant can never lift overhead.
13       Applying that RFC finding at step four, with the
14  assistance of vocational expert testimony, ALJ Horton
15  concluded that plaintiff is capable of performing his past
16  relevant work as a production supervisor, both as performed
17  actually and as generally performed.
18       In the alternative, proceeding to step five,
19  notwithstanding the step four finding, and again based on the
20  testimony of the vocational expert, ALJ Horton concluded that
21  plaintiff is capable of performing work available in the
22  national economy as an injection molding machine attendant, a
23  light work position with an SVP of 2, and therefore concluded
24  that plaintiff was not disabled at the relevant time.
25       As you know, the Court's function is limited to

Case 3:19-cv-01062-DEP   Document 15   Filed 10/14/20   Page 11 of 15

*Decision - 10/8/2020 - 19-cv-1062*                              8

 1   determining whether correct legal principles were applied and
 2   substantial evidence supports the resulting finding.
 3   Substantial evidence has been defined as such relevant
 4   evidence as a reasonable mind would find sufficient to
 5   support a conclusion.
 6              In this case, plaintiff's contention is that the
 7   Administrative Law Judge failed to resolve a conflict between
 8   the Dictionary of Occupational Titles, or DOT, and the
 9   vocational expert testimony concerning the restriction on
10   overhead lifting.  Plaintiff does not in this case challenge
11   the RFC finding.  No question that if there is an apparent
12   conflict between the DOT and the testimony of the vocational
13   expert, the Administrative Law Judge must elicit a reasonable
14   explanation for the conflict and resolve it before relying on
15   the testimony of the vocational expert, and the reasoning
16   must be set forth.
17              As the Social Security Ruling 00-4p makes that
18   clear, and the Second Circuit has reiterated and reaffirmed
19   that in *Lockwood versus Commissioner of Social Security*
20   *Administration*, 914 F.3d 87, a decision from January 23,
21   2019, it is insufficient, as the Second Circuit made clear in
22   *Lockwood*, to rely merely on a conclusory statement from a
23   vocational expert that his or her testimony is consistent
24   with the DOT.
25              The defendant argues that there is no conflict

1   here.  Light work, which is a finding of the RFC limitations
2   and which the two positions in question fall under, includes
3   lifting no more than 20 pounds at a time with frequent
4   lifting or carrying of objects weighing up to 10 pounds, 20
5   CFR Section 404.1567(b).  The Dictionary of Occupational
6   Titles does not specify a direction for the required lifting
7   under the light work definition.  The Dictionary of
8   Occupational Titles, or DOT, listings for the two positions
9   in question, general supervisor and injection molding machine
10  tender, speak to lifting.  The general supervisor, DOT
11  Section 183.167-018, specifies that it is light work with no
12  direction specified and requires occasional reaching, meaning
13  less than one-third of the time, without specifying
14  direction.  DOT Section 556.685-038, that relates to
15  injection molding machine tender, also specifies light work
16  and requires frequent reaching, meaning one-third to
17  two-thirds of the time, that's again without specifying
18  direction.  Reaching, of course, under SSR 83-10 is a
19  non-exertional limitation.
20          This case is very similar to what was confronted by
21  the Second Circuit in *Lockwood*.  That case involved a
22  residual functional capacity finding that limited the
23  plaintiff to no overhead reaching.  The DOT for those three
24  jobs that were in question in that case required reaching
25  with no direction specified, and so a conflict existed.

1    I did have a problem with this case, and I went
2  back and forth because I understand the Commissioner's
3  argument that normally lifting is something that is done from
4  the waist level down, that would be the normal understanding
5  of lifting.  There certainly isn't anything in the DOT that
6  specifies.  I did find, however, the selected characteristics
7  of occupations defined in the revised Dictionary of
8  Occupational Titles, 1993 edition, published by the United
9  States Department of Labor Employment and Training
10 Administration, it's called the SCODICOT, in Appendix C it
11 addresses physical demands and defines lifting as, quote,
12 "Raising or lowering an object from one level to another
13 (includes upward pulling)."  That definition did not
14 necessarily seem to limit to lifting from the waist down.
15   I do believe that there is a conflict between
16 certainly at step five and at step four, as generally
17 performed the supervisory position, because the Dictionary of
18 Occupational Titles characterizes those as light work and
19 does not speak to lifting.  However, I believe the error to
20 be harmless.  This is the case similar to *Jasinski*, which was
21 cited by the Commissioner, *Jasinski versus Barnhart*, 341 F.3d
22 182 (Second Circuit 2003).  The plaintiff gave testimony
23 concerning the fact that lifting was not required in his
24 position as a supervisor, the vocational expert heard that
25 testimony, was aware of the hypothetical posed which limited

1   the no overhead lifting, and testified that plaintiff was
2   capable of performing his past relevant work as actually
3   performed.  It was plaintiff's burden at step four to prove
4   otherwise, and plaintiff did not carry that burden.
5            So, I do find error at step four and five, but I
6   find it was harmless for the reasons that I just stated.  I
7   will, therefore, grant judgment on the pleadings to the
8   defendant and order dismissal of plaintiff's complaint.
9            I found this case to be very interesting and,
10  frankly, went back and forth on it, but in the end I think
11  for the reasons stated that the case should be dismissed.
12           Thank you both for excellent presentations.  Hope
13  you stay safe.
14                  *           *           *
15
16
17
18
19
20
21
22
23
24
25

C E R T I F I C A T I O N

    I, EILEEN MCDONOUGH, RPR, CRR, Federal Official Realtime Court Reporter, in and for the United States District Court for the Northern District of New York, do hereby certify that pursuant to Section 753, Title 28, United States Code, that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

_____
EILEEN MCDONOUGH, RPR, CRR
Federal Official Court Reporter